In the

# United States Court of Appeals
## For the Seventh Circuit

No. 11-1211

KENNETH IRISH, *et al.*,

*Plaintiffs-Appellants*,

*v.*

BNSF RAILWAY COMPANY, f/k/a
BURLINGTON NORTHERN AND
SANTA FE RAILWAY COMPANY, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Western District of Wisconsin
No. 08 C 469—**Barbara B. Crabb**, *Judge*.

ARGUED SEPTEMBER 12, 2011—DECIDED MARCH 21, 2012

Before BAUER, ROVNER and WILLIAMS, *Circuit Judges*.

ROVNER, *Circuit Judge*. This is a lawsuit in search of
a viable theory of recovery. The plaintiffs have sued
the BNSF Railway Company and Burlington Northern
and Santa Fe Railway Company (collectively "Burlington
Northern"), along with two Burlington Northern em-

ployees, under theories of negligence and nuisance for damage that occurred to their homes after a BNSF trestle became clogged with debris during a rainstorm, resulting in widespread flooding. The district court concluded that section 88.87 of the Wisconsin Statutes provides the exclusive remedy for claims resulting from the construction and maintenance of railroad grades, and that because the plaintiffs had failed to follow the governing notice procedures for claims under that statute, relief was unavailable to the plaintiffs. *Irish v. BNSF Ry. Co.*, 2010 WL 4293578 (W.D. Wis. Oct. 21, 2010). We affirm.

The small village of Bagley, Wisconsin, sits on the eastern bank of the Mississippi River. On July 17-18, 2007, a 500-year rain event in northeastern Iowa and southwestern Wisconsin overwhelmed local drainage ways with huge amounts of runoff water. Where the Burlington Northern Railway Bridge crosses over the Glass Hollow Drain near Bagley, debris swept along by the raging waters quickly clogged the trestle beneath the bridge (hereinafter, the "BN trestle" or the "trestle"), causing the runoff to back up and inundate the village. Most of the village's 300 to 400 homes were flooded.

Four of Bagley's residents filed suit against Burlington Northern and two of its supervisory employees in Wisconsin state court on behalf of themselves and a proposed class of others injured by the flood, alleging that Burlington Northern's faulty design and maintenance of the trestle entitled them to relief on theories of negligence and nuisance. Burlington Northern removed the

suit to federal court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2) & (d)(5). After the plaintiffs filed an amended complaint from which their class allegations were excised, the district court remanded the case to state court. *See Irish v. Burlington N. Santa Fe Ry. Co.*, 2009 WL 1308429, 73 Fed. R. Serv. 3d 702 (W.D. Wis. May 7, 2009) (granting plaintiffs leave to amend their complaint and remanding case to state court); *Irish v. Burlington N. Santa Fe Ry. Co.*, 632 F. Supp. 2d 871 (W.D. Wis. 2009) (denying reconsideration of remand order). We vacated the decision to remand, holding that removal to federal court under CAFA survives even when the plaintiffs later elect not to pursue class certification. *In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379 (7th Cir. 2010) (per curiam). On remand, the district court dismissed the amended complaint as to Burlington Northern for failure to state a claim on which relief could be granted. 2010 WL 4293578. The court rejected Burlington Northern's contention that federal law preempted the plaintiffs' claims under Wisconsin law for negligence and nuisance, *id.* at *2-*3, but agreed that Wis. Stat. § 88.87 provided the exclusive remedy based on the types of facts alleged in this case and that relief was foreclosed to the plaintiffs under that statute because they had not filed a timely notice of claim, *id.* at *4-*5. Following supplemental briefing as to the remaining individual defendants, the district court dismissed them as well and entered final judgment. The court rejected as untimely the plaintiffs' requests for leave to amend their complaint to assert claims for equitable relief and for relief under federal common

law against Burlington Northern and also to permit them to proceed against Burlington Northern under section 88.87 notwithstanding their failure to comply with the pertinent notice requirements on the theory that Burlington Northern had actual notice of their claim. R. 89.

On appeal, the plaintiffs contend that, contrary to the district court's reading of section 88.87, the statute does not reach the type of claim they have made and that consequently they remain free to seek relief under common law theories of negligence and nuisance. In relevant part, section 88.87 provides as follows:

> (2)(a) Whenever any county, town, city, village, railroad company or the department of transportation has heretofore constructed and now maintains or hereafter constructs and maintains any highway or railroad grade in or across any marsh, lowland, natural depression, natural watercourse, natural or man-made channel or drainage course, it shall not impede the general flow of surface water or stream water in any unreasonable manner so as to cause either an unnecessary accumulation of waters flooding or water-soaking uplands or an unreasonable accumulation and discharge of surface waters flooding or water-soaking lowlands. . . .
>
> * * * *
>
> (c) If a city, village, town, county, or railroad company or the department of transportation constructs and maintains a highway or railroad

grade not in accordance with par. (a), any property owner damaged by the highway or railroad grade may, within 3 years after the alleged damage occurred, file a claim with the appropriate governmental agency or railroad company. The claim shall consist of a sworn statement of the alleged faulty construction and a description, sufficient to determine the location . . . of the lands alleged to have been damaged by flooding or water-soaking. Within 90 days after the filing of the claim, the governmental agency or railroad company shall either correct the cause of the water damage, acquire rights to use the land for drainage or overflow purposes, or deny the claim. If the agency or company denies the claim or fails to take any action within 90 days after the filing of the claim, the property owner may bring an action in inverse condemnation under ch. 32 or sue for such other relief, other than damages, as may be just and equitable.

The statute thus imposes a duty on a railroad company that constructs and maintains a railroad grade in or across a drainage course not to impede the flow of surface water in an unreasonable manner, and it grants to a landowner injured as a result of the breach of that obligation, provided the landowner has given appropriate notice to the railroad company, the right to sue for equitable relief and inverse condemnation but not damages.

On its face, the statute would appear to bar the very suit for damages that the plaintiffs are pursuing. As the

district court noted, there is no dispute that Burlington Northern (including its predecessors) constructed the bridge and trestle over the Glass Hollow Drain and now maintains that trestle. R. 89 at 11-12 ("Plaintiff's complaint is written on the assumption that the railroad company 'constructed and now maintains' the trestle at issue in this case within the meaning of § 88.87(2)(a)."). Allegedly, it was the accumulation of debris at that trestle that impeded the flow of runoff water and caused the plaintiffs' properties to flood; and plaintiffs attribute the formation of the logjam at least in part (more on that in a moment) to Burlington Northern's purported negligence in maintaining the trestle. The Wisconsin appellate court's decision in *Pruim v. Town of Ashford*, 483 N.W.2d 242, 244-45 (Wis. Ct. App. 1992), indicates that this is exactly the sort of claim to which section 88.87 applies, and the plain language of the statute limits the relief available to an injured landowner solely to equitable relief and a claim for inverse condemnation. *Pruim* ordered the dismissal of a nuisance claim seeking compensation for flood damage that occurred to the plaintiff's property when a nearby culvert and roadway shoulder, which allegedly had been negligently designed and maintained by the local municipality, washed out during a heavy rain. "We conclude that the legislature decided to regulate and control strictly the types of claims that may be made by property owners against governmental entities regarding highway construction and repair. Common law nuisance actions are not allowed. The statute clearly and unambiguously forbids it." *Id.* at 245; *see also Kohlbeck v.*

*Reliance Constr. Co.*, 647 N.W.2d 277, 280 (Wis Ct. App. 2002) ("Section 88.87 limits the type of relief available to those that are stated in the statute."). The district court reached the same conclusion with respect to the plaintiffs' claims against the railroad company in this case. 2010 WL 4293578, at *4.

The plaintiffs now contend that the district court as well as the appellate court in *Pruim* read section 88.87 too broadly. Although the statute purports to apply to any government entity or railroad company that "constructed and now maintains" a grade over a waterway or drainage course, in the plaintiffs' view this language merely serves to identify the entity that has authority over the grade at time of claimed damage rather than to extend the statute's substantive provisions to the maintenance of a grade as well as its design and construction. Looking to other language in the statute, they argue that the Wisconsin legislature was concerned solely with faulty construction of a type that might give rise to a continuing nuisance thereafter.

> It is obvious that initial faulty construction which disturbs the natural flow of water has the potential for repeated flooding and, consequently, repeated claims for damage arising from the continuing nuisance created by that faulty construction. The legislative intent was to require property owners affected by such a condition to bring an action for inverse condemnation or "such other relief" as will effectively remedy the continuing nuisance "once and for all."

Appellants' Lead Br. 13. The plaintiffs go on to emphasize that their claim, by contrast, is concerned not

with the design but solely with the maintenance of the BN Trestle, and in particular the company's failure to screen or otherwise protect the trestle from the accumulation of debris which might cause the flow of water through the Glass Hollow Drain to become blocked. "Because there is no clearly stated legislative intent to preempt common law claims based on negligence and nuisance arising from this alleged faulty *maintenance*, as opposed to faulty *construction*, of the Burlington Northern Trestle[,] the District Court's holding that plaintiffs' common law claims for damages are preempted by Wis. Stat § 88.87 was erroneous and cannot stand." Appellants' Lead Br. 15 (emphasis in original).

The notion that the plaintiffs' claim is founded solely on negligent maintenance of the BN Trestle may be doubted. As Burlington Northern is quick to point out, no fewer than eight paragraphs of the amended complaint charge the defendants with faulty design and construction of the trestle, in addition to inadequate maintenance. R. 58 ¶¶ 5, 31, 40, 46, 47, 48, 52, 53. But we may set this point aside.

The more important point is that this argument, if it was made at all below, was never developed. As the district judge noted in dismissing the plaintiffs' claims against Burlington Northern, the only developed argument that they made against application of section 88.87 was that it is a governmental immunity statute that applies to private parties only when those parties are affiliated with government entities. 2010 WL 4293578,

at *4. That was, indeed, the argument to which the plaintiffs devoted nearly all of their attention in the relevant portion of the memorandum they filed in opposition to the defendants' motion to dismiss. R. 72 at 19-25. (It was an argument doomed from the start, as the district court noted, given that the statute expressly applies to railroad companies per se, with no requirement that they be acting in affiliation with government entities. 2010 WL 4293578, at *4.) It is true that in all of two sentences at the beginning of this section of their memorandum, the plaintiffs did say the following:

> [T]he plain language of the statute clearly sets up a claims procedure and remedy limitation for new constructions that affect waterways. This statute was never intended to apply to a railroad compan[y's] failure to maintain a waterway that (1) has nothing to do with its tracks or roadbed and (2) has not had a new construction in over 80 years.

R. 72 at 19. The memorandum then switched gears and for the next five and one-half pages principally pursued the argument that the statute did not apply to railroad companies lacking any affiliation with governmental entities, while making scattered references to an unelaborated distinction between the alteration of drainage ways and the collection of surface water. R. 72 at 20-25. At the close of this section, the plaintiffs repeated the idea that they had briefly mentioned and then dropped earlier:

> Beyond that, Defendants' failure to maintain [their] right-of-way is not the type of construction or

> repair case leading to changes in surface water that is targeted by the statute. Further, Plaintiffs' claims have no relation to Defendants' construction or maintenance of [their] railway, [their] roadbed, [their] railroad ties, or other areas immediately adjacent to the roadbed.

R. 72 at 25.

These passing remarks were insufficient to preserve the argument that plaintiffs are making now. First, the argument was never developed below. A two-sentence aside, made without citation to any authority and in the midst of an argument focused on another point, does not alert the court that the party is making an independent argument and ordinarily will not warrant the court's attention. Crediting the plaintiffs with the additional two-sentence summary at the close of that section of their memorandum does not render the argument any more developed. In fact, that refrain only casts doubt on the exact point that the plaintiffs intended to make: In the first instance, it appeared that the plaintiffs were principally suggesting that the statute only applied to newly constructed tracks or roadbed; whereas in the second instance the plaintiffs seemed to acknowledge that faulty repair or maintenance might also bring the statute into play, but only insofar as they related to the railway and the roadbed, as opposed (evidently) to something like a trestle. Which makes it all the more clear, finally, that the plaintiffs never adequately presented to the district court the particular argument they are making now, that section 88.87

applies only to the sort of faulty construction that might give rise to a continuing nuisance vis-à-vis the flow of surface water above, below, or around a roadway or rail line.

The short history of this case reflects the ever-shifting nature of the plaintiffs' arguments. When the case was removed to federal court, the plaintiffs dropped their class allegations and disavowed any federal claims, in the hope that the case would be returned to state court. In their amended complaint, the plaintiffs cited section 88.87 as support for their claim, contending that the defendants had violated the obligations imposed by that statute, R. 58 ¶¶ 33(c) and (d), 35, but when Burlington Northern moved to dismiss the complaint on the ground that the relief the plaintiffs were seeking was not authorized, the plaintiffs turned around and contended that the statute did not apply to their claims. *See* 2010 WL 4293578, at *4 ("Plaintiffs' position is somewhat surprising in light of the fact that they allege in their amended complaint that defendants violated Wis. Stat. § 88.87."). When the district court, after dismissing the corporate defendants from the case, solicited supplemental briefing as to the appropriate disposition of the individual defendants, the plaintiffs sought leave to amend their complaint a second time in order to raise the very sorts of federal claims (among others) that they had disavowed when they filed their first amended complaint. They also attempted to make other arguments that the district court appropriately characterized as untimely. And on appeal, as we have discussed, they have attempted to challenge the dismissal

of their suit on the basis of an argument that they never developed below. As Judge Crabb so aptly observed, "Although the losses plaintiffs sustained in the 2007 flood are unfortunate, even a sympathetic plaintiff is not entitled to an endless number of chances to reinvent this lawsuit until he discovers a version that leads to victory." R. 89 at 3.

The plaintiffs forfeited the argument that they make now as to the scope of section 88.87 by not developing the argument below, and this is not the rare civil case in which the forfeiture might be overlooked. *See Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794, 803 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 1007 (2011). They also attempt to argue that the remedy of inverse condemnation authorized by section 88.87 is insufficient; but that too appears to be an argument that they failed to raise below. In view of the forfeiture, we deny the plaintiffs' request to certify to the Wisconsin Supreme Court any question concerning the proper construction of section 88.87. And because the plaintiffs have forfeited the arguments they make on appeal as to the scope of section 88.87, we need not reach the defendants' alternative contention that the plaintiffs' state claims are preempted by the Federal Railway Safety Act.

AFFIRMED